UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA RUGE,<br><br>      Plaintiff,<br><br>   v.<br><br>DELTA OUTSOURCE GROUP, INC.,<br><br>      Defendant. | No. 15 CV 10865<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Angela Ruge alleges that Delta Outsource Group, Inc., violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), while trying to collect on Ruge's debt. Delta and Ruge both move for summary judgment. For the following reasons, Delta's motion is denied and Ruge's motion is granted.

**I.    Legal Standards**

On cross-motions for summary judgment, a court must "look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). For each motion, factual inferences are viewed in the nonmovant's favor. *See Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). However, "[c]ross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions— establishes that no material facts are in dispute." *Bloodworth v. Village of*

*Greendale*, 475 Fed. App'x 92, 95 (7th Cir. 2012) (citing *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011)).

## II. Background[1]

Plaintiff Angela Ruge had a consumer, retail credit card account with Comenity Bank. [40] ¶ 6. Her debt was in default, and by June 2015, the bank stopped charging her interest and late fees. [40] ¶ 8. In late August 2015, the bank assigned Ruge's debt to defendant Delta Outsource Group, Inc., a licensed collection agency. [40] ¶¶ 4, 12–13. Within a few days, Delta sent Ruge a letter with information about the debt, including the identity of the current creditor, identity of the original creditor, account number, and a current balance on the debt. [32] ¶¶ 1–2. Delta's letter also stated: "Because of interest, late charges, or other charges that may vary from day to day, the amount due on the day you pay may be greater." [32] ¶ 3.[2] Delta did not actually add interest, late fees, or other fees to Ruge's account,

---

[1] Bracketed numbers refer to entries on the district court docket. Ruge's response to Delta's Local Rule 56.1 statement of facts is [32], and Delta's response to Ruge's statement is [40]. Ruge purports to contradict some of Delta's statements by asserting that Delta's copy of Ruge's credit card agreement with Comenity Bank is not an accurate copy. Delta submitted the agreement with an affidavit from a Comenity Bank paralegal (familiar with the bank's recordkeeping practices), stating that the agreement was a true and correct copy of Ruge's credit card agreement. Local Rule 56.1 requires controverting evidence to properly dispute a factual statement, and Ruge has not submitted any evidence to show that the exhibit is not a true and accurate copy of the agreement. The purpose of Local Rule 56.1 is to permit the district court to identify at summary judgment which material facts are in dispute. The parties' Rule 56.1 statements and responses are viewed with this principle in mind. Unless otherwise noted, the facts related below are undisputed or are considered undisputed because the responding party did not properly controvert the factual statement as required by local rule.

[2] The Local Rule 56.1 statement quotes the letter as "Because of interest, late charges, *and* other charges," but the actual letter states "Because of interest, late charges, *or* other charges." [1-1] at 4 (emphasis added).

2

[32] ¶ 9, and Delta does not add interest or late charges to Comenity Bank accounts assigned to it for collection. [40] ¶ 18.[3]

**III.    Analysis**

Ruge seeks summary judgment, arguing that Delta lacked authority and never intended to charge interest, thereby violating 15 U.S.C. § 1692e, which prohibits a debt collector from using false, deceptive, or misleading means to collect a debt, and violating § 1692f, which prohibits a debt collector from using unfair or unconscionable means to collect a debt. Under the umbrella of § 1692e, she specifically invokes: § 1692e(2)(A), which prohibits the false representation of the character, amount or legal status of a debt; § 1692e(5), which prohibits threatening to take "any action that cannot legally be taken or that is not intended to be taken;" and § 1692e(10), which prohibits the use of any false representation or deceptive means to collect a consumer debt. Delta also seeks summary judgment, maintaining that it did not use deceptive or unfair means to collect Ruge's debt because its letter conformed to safe harbor language outlined by the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), and because it had authority to collect interest.

Ruge's arguments are largely unpersuasive, but she prevails on the parties' cross-motions for summary judgment because the undisputed evidence is that Delta

---

[3] Delta objects to Ruge's statement of fact that Delta did not "intend" to collect interest or late charges, arguing that Delta's interrogatory responses and corporate deponent did not concede the word "intend." [40] ¶ 18. But the interrogatory responses and deposition testimony clearly admit that Delta does not add interest or late charges to Comenity Bank accounts.

3

did not charge interest on Comenity Bank accounts. As a result, Delta's dunning letter was materially false or misleading, because it implied that "because of interest" the amount due may increase. This implied an action—the assessment of interest—that Delta did not intend to take, in violation of § 1692e(5).

A § 1692e claim requires demonstrating that the debt collection language constituted a materially false statement that was misleading—a technically false statement that is not misleading does not run afoul of § 1692e. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). A false or misleading statement is material if it has the ability to influence a consumer's decision. *Id.* at 826. In deciding whether a dunning letter is misleading, the letter is viewed through the perspective of an "unsophisticated consumer." *Id.* at 822.

Delta's letter to Ruge stated: "As of the date of this letter, our records indicate that you currently owe $814.94. Because of interest, late charges, or other charges that may vary from day to day, the amount due on the day you pay may be greater." [1-1] at 4. The letter implied that adding interest was a possible outcome of Delta's debt collection. The conditional nature of the language at issue does not save it from the misleading impression that additional interest debt was possible, when the truth is that Delta was never going to assess interest against Ruge. *See Lox*, 689 F.3d at 825 ("[C]onditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability.") (quoting *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1059 (9th Cir. 2011)); *Ruth v. Triumph P'ships*, 577 F.3d 790, 801 (7th Cir. 2009) (the

4

only reasonable interpretation of a letter stating that debt collector "may collect and/or share all information we obtain in servicing your account" to "the extent permitted by law" was that the letter threatened to share information without permission). "When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril." *Lox*, 689 F.3d at 825.

Delta argues that it is entitled to summary judgment because its letter describes the amount of Ruge's debt using "safe harbor" language provided in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). In *Miller*, the Seventh Circuit outlined safe harbor language for a debt collector to state the amount of a debt, if the amount varies day-to-day:

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800– [phone number].

*Id*. at 876. While Delta's letter is nearly identical to the safe harbor language in *Miller*,[4] *Miller* does not provide a defense if the safe harbor language itself is

---

[4] A debt collector need not use *Miller*'s exact language, *Miller*, 214 F.3d at 876, but Delta's letter is essentially identical. It stated:

> As of the date of this letter, our records indicate that you currently owe $814.94. Because of interest, late charges, or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the

5

inaccurate under the circumstances.[5] *Id*. (a debt collector using the "safe harbor" language does not misstate the amount of a varying debt "provided, of course, that the information he furnishes is accurate"). It is undisputed that Delta did *not* charge interest on Comenity Bank accounts assigned to it for collection, including Ruge's account. [40] ¶ 18. The safe harbor language that says the amount of the debt might change because of interest was not true in this particular case.

Delta argues that its policy is not evidence of Delta's lack of intent to charge Ruge interest. But taking all reasonable inferences in Delta's favor (as the nonmovant on Ruge's cross-motion for summary judgment), the only reasonable inference to be drawn from Delta's policy is that Delta did not intend to collect interest on Ruge's account. *See, e.g., Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989) (§ 1692e(5) violated when dunning letter threatened legal action over plaintiff's $35 debt but where debt collector testified that it routinely would take no further action on debts under $150 other than attempting telephone contact); *Morgan v. Credit Adjustment Bd., Inc.*, 999 F.Supp. 803, 807 (E.D. Va. 1998) (granting summary judgment for debtor on a § 1692e(5) claim where the dunning letter referenced the possibility of legal action and where the debt

---

check for collection. For further information, write the undersigned or call 1-800-364-1895.

[1-1] at 4.

[5] *Miller* applies to credit card debt. *See Chuway v. National Action Fin. Servs., Inc.*, 362 F.3d 944, 949 (7th Cir. 2004). Courts have also found *Miller* instructive in addressing § 1692e and § 1692f claims premised on the misstatement of a debt amount. *See, e.g., Wilder v. J.C. Christensen & Assocs., Inc.*, No. 16-CV-1979, 2016 WL 7104283, at *2 (N.D. Ill. Dec. 6, 2016).

collector's president testified that a debtor's failure to respond to the letter only resulted in phone calls to the debtor); *compare Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1176 (11th Cir. 1985) (denying summary judgment on § 1692e(5) claim where record contained factual dispute over the debt collector's actual policies); *Robinson v. Transworld Sys., Inc.*, 876 F.Supp. 385, 393 (N.D.N.Y. 1995) (granting summary judgment for debt collector on a § 1692e(5) claim where the record showed that the debt collector, who had threatened legal action, considered legal action depending on the facts and circumstances of each individual file). Moreover, Delta does not argue that it ever intended to add interest to Ruge's account, or indeed any Comenity Bank account. Delta's dunning letter was deceptive by implying that it might charge interest when in fact it had no such intention. *See, e.g., Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) ("[I]t would be deceptive under the FDCPA for [a debt collector] to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before."); 53 Fed. Reg. 50,097-02 (Dec. 13, 1988) ("A debt collector may state that certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts; however, if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading."); *compare Shuler v. Ingram & Assocs.*, 441 Fed. App'x 712, 719–20 (11th Cir. 2011) (affirming summary judgment for lawyer-debt collector, where there was a reasonable likelihood that he would sue the plaintiffs and where the plaintiffs failed to present evidence to show

that the lawyer-debt collector secretly never intended to sue or has only sued on rare occasions).

The fact that Delta had a policy of not charging interest on Comenity Bank accounts distinguishes this case from *Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004), which held that a dunning letter stating that the debt collector might collect interest "if applicable" was merely stating a truism and did not misstate the amount of a debt although interest was never added. If Delta had intended to charge Ruge interest, or even if Delta considered interest on an individual-by-individual basis for Comenity Bank accounts, perhaps *Taylor* might apply. But *Taylor* did not involve a debt collector who had a policy of not charging interest. Merely deciding not to add interest to an account is one thing; holding out the possibility of charging interest when a debt collector knows that interest will not be added is another—it is a false statement.

Delta's conditional statement about interest was material because, if it were accurate, it could have affected the amount of debt owed by Ruge depending on when she paid it and therefore it would likely be a factor in a consumer's decision-making process. *See Lox*, 689 F.3d at 827 (conditional but misleading statement was material because it could have affected the amount of debt owed by the plaintiff and "would have undoubtedly been a factor in his decision-making process"). Delta's letter used false or misleading means to collect on a debt because it threatened to

8

take an action that Delta had a policy of not taking. There is no genuine issue of material fact and summary judgment for Ruge is appropriate.[6]

---

[6] Two additional points argued by the parties merit some comment for the sake of completeness. First, Delta did have the authority to charge Ruge interest. Ruge's credit card agreement allows Comenity Bank to charge interest and unambiguously gives the bank the right to transfer or assign its rights, including the right to collect interest and late payment charges, and to delay enforcing its rights without waiving them. [14-1] at 7–8. Delta's agreement with Comenity Bank does not prohibit Delta from charging interest and affirmatively describes the proceeds from accounts assigned to Delta for collection as including but not limited to "principal balance, interest (contractual or statutory), and other such amounts as may be legally recovered by [Delta]." [45-1] at 2. The agency agreement therefore permits Delta to collect interest. Second, Comenity Bank did not waive its right (and therefore Delta's right) to collect interest when it charged-off the account in May 2015, did not send periodic statements after May 2015, and stopped charging interest in June 2015. Delaware law applies to the credit card agreement, and a waiver is the voluntary and intentional relinquishment of a known right, through terms (express waiver) or conduct (implied waiver). *Realty Growth Inv'rs v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982). Charging-off Ruge's account and ceasing periodic statements were not voluntary actions and therefore cannot support waiver. Federal regulations require financial institutions to charge-off credit card accounts that remain delinquent for 180 days. *See* 65 Fed. Reg. 36,903-01 (June 12, 2000); *Wilder*, 2016 WL 7104283, at *5. Under the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*, and its regulations, 12 C.F.R. § 226, a creditor's obligation to send periodic statements ends when it ceases collection efforts. 12 C.F.R. § 226.5(b)(2)(i); *Wilder*, 2016 WL 7104283, at *5. A jury could not find implied waiver based on the two months that Comenity Bank did not charge interest when Ruge's credit card agreement allowed the bank to delay enforcing its rights without waiver and when facts showing waiver "must be unequivocal in character." *Realty Growth*, 453 A.2d at 456. The intent to waive will not be implied from slight circumstances. *Vechery v. Hartford Accident & Indem. Ins. Co.*, 49 Del. 560, 566 (1956). But the fact that Delta was permitted to charge interest does not make its dunning letter truthful, because it never intended to assess interest on Ruge's account, so any suggestion that it might was false.

9

## IV. Conclusion

Delta's motion for summary judgment, [13], is denied and Ruge's motion for summary judgment, [31], is granted. A status hearing is set for March 28, 2017 at 9:30 a.m.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 3/13/17